**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HURSEN PATIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-3071** |
| **JAMES LEBLANC, SECRETARY,** | **SECTION "C"(4)** |
| **JEFFERY TRAVIS, REGIONAL WARDEN, AND** | |
| **ROBERT TANNER, RAYBURN** | |
| **CORRECTIONAL CENTER - HEAD WARDEN** | |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I.    Factual Summary

The plaintiff, Hursen Patin, is an inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana. Patin filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc of the Louisiana Department of Public Safety and Corrections ("DOC"), Regional Warden Jeffery Travis, and RCC Warden Robert Tanner challenging the conditions of his confinement at RCC.

Patin alleges that the Wind Unit at RCC houses 316 medium custody prisoners,[1] and there are only four or five tables for the prisoner to use. Patin alleges that when any of these inmates are off-duty from their prison work assignment, they are still required to go outside to stand or sit on the wet or dew soaked grass. He also complains that inmates crush their cigarettes in and spit saliva and tobacco juice onto the same grass where the off-duty inmates must stay. He also complains that the inmates remain unprotected in the sun and weather, including hot and cold temperatures with inadequate clothing. He concedes that the inmates are left outdoors on Monday through Friday from 6:45 a.m. to 10:15 a.m. and 12:15 a.m. to 3:15 p.m. to allow the dormitory orderlies to clean the dorms and to allow the unit supervisors to inspect the dorms.

On the B-team shift, a dorm is left opened at 8:00 a.m. until 10:15 a.m. and 1:00 to 3:15 p.m. to allow the inmates to take bathroom breaks. When the A-team is on duty, however, a dorm is only opened for bathroom breaks for 10 minutes on the hour starting at 8:00 a.m. He complains that this causes inmates to have to urinate and defecate outside.

Patin contends that the other DOC prisons do not put the inmates outside in the weather. He also suggests that if the other prisons are short on officers, they close some of the dorms and rotate the dorms to the outside so that there is enough seating.

Patin further complains that his Eighth Amendment right to safety is violated because of the reckless disregard for or lack of water sprinklers and smoke detectors on the Wind Unit. He contends that the lack of an adequate number of working smoke detectors and sprinklers on the Wind Unit exposes the prisoners to an excessive safety risk. He complains that some areas have no sprinklers or smoke detectors at all. He indicates that these areas include the area where there are

---

[1] Patin indicates that these prisoners include those who are file workers, attending literacy school, attending GED school, attending vo-tech trade school, fence crew, lawnmower crew, "a-walk crew," and dorm orderlies.

pilot lights atop of the clothes dryers and nearby exposed gas lines, the kitchen, the vo-tech welding area, the AS&R department where gas tanks are stored, the maintenance welding area, and the computer buildings. He also alleges that the prison's electrical wiring was done "hazardly."

Patin next indicates that most of the units in the prison, including Wind, have a law library with two small desks for the two assigned prison counselors and other units have different library set ups. He complains that these libraries fall below acceptable standards, except the one in Sun Unit. He alleges that the libraries do not have any law books recommended for prisons by the American Association of Law Libraries Committee. He concedes that the libraries each have civil and criminal codes, Georgetown Law Journals, Black's Law Dictionary, two computers, and, in the Wind Unit, about one-hundred outdated Southern Reporters. He complains that there are no Federal Reporters, Criminal Law Digests, Shepard's Citators, basic treatises on habeas corpus, self-help litigation manuals, or prison civil rights books.

He further complains that, while there are a couple of knowledgeable prison counselors, the prison has no civil litigation staff members with legal or paralegal training to supervise the libraries or to assist inmates with research. He also complains that the law libraries are only opened from 8:00 a.m. to 10:00 a.m. and 12:30 p.m. to 3:00 p.m., if other prison officials are not holding disciplinary court or job board interviews. He complains that this conflicts with the daily work shift period time. He further complains that there are no chairs or tables for inmates to sit at to do research. He also alleges that when a prisoner requests a case, it can take one to three working days to receive it depending on whether the computer and printer are working and whether the information requested is available from the prison.

Patin also alleges that RCC does not have adequate rehabilitation programs and that the officials discriminate against long-term prisoners. He asserts that he has a lengthy sentence, and will be up for his first parole hearing in April of 2013. Because of his long sentence, he is effectively precluded from getting into vo-tech trade school, because he is in line behind those with shorter sentences and earlier parole eligibility. He also generally complains that some DOC prisons do not have any trade school programs. Patin alleges that he applied for admission to the auto body/collision repair trade or brick masonry schools, based on his pre-prison experience and earlier training, but RCC does not offer either of those trades.

Patin alleges that the prison officials at RCC also told him that a transfer would not help, because he would still be placed in line behind those with shorter sentences. Patin complains that, although he is familiar with roofing work, the parole or clemency board would require some proof of his experience in the area. Patin further alleges that his mother's efforts to get the Deputy Secretary of the DOC to transfer him to get into a trade program were also denied.

Patin next claims that the prison officials have discriminated against him for job placement at the prison. He claims that he is a good worker. He, however, submitted a job request application to work as a dorm orderly or kitchen worker. His request was denied as a result of his past prison disciplinary record. Specifically, he claims the denial was based on a four-year-old disciplinary conviction for violation of Rule 21, as a result of a "lying letter" written by another inmate which apparently targeted Patin as having threatened the safety of a female laundry supervisor, Master Sergeant M. Johnson. He was found guilty and placed in administrative segregation and reassigned to field crew 11. He also lost his job, bed, and dorm location and was reassigned to the lawnmower crew about two months later.

He is angered that the prison still uses this incident against him in his efforts to get a better job.  He alleges that he asked the classification officers, Kathy Seals, Major Kennedy, and Lieutenant Colonel Anderson, but they deferred to the Warden.

He complains that he has been denied certain jobs since his arrival at RCC on March 2, 2009, even though there are other prisoners who violated Rule 21.  He claims some even live in dorms run by female officers and work in dorms as orderlies, in the kitchen and gym, and attend schools.  He claims there are even "street conviction rapists" and child molesters working in those jobs.

Patin further complains that the prison officials show mail to other inmates in violation of security protocol.  He claims that, when officers cannot read the envelopes during mail call, they may show the envelope to other inmates to get help.  He further alleges that some officers may give a prisoner someone else's mail to deliver without the recipient's consent.  They also leave inmate mail sitting around in the officers' station.  He claims this exposes the identity of a prisoners' friends and family, as well as their addresses, to all of the other inmates.

Next, Patin alleges that there are cameras in the bathroom and that prisoners are watched by male and female security officers when they shower, defecate, and urinate.  He claims that the inmates are consistently watched by all of the various officials on the tier at all times, and the security post is directly in front of the bathroom area.  He complains that he has no privacy in the bathroom.

Patin also complains that, in maximum security, extended lockdown, and administrative segregation, prisoners do not have access to cold drinking water or any water other than what can be sipped from his hand from the sink faucet, which he also claims is corroded.  He otherwise only gets drinking water at meals and pill call, if he is getting medication.

He also complains that he is not provided with an ink pen except in the afternoons, even if he has legal work to do. He only receives a small pea-sized amount of toothpaste three times a day. It is placed by the day shift supervisors, who are twin brothers, onto each inmates food tray. If an inmate has a problem with these supervisors, the inmate is treated badly by the night shift supervisor, who is the day shift supervisor's cousin.

He further complains that each of the four tiers has multiple cameras and microphones. The cell walls were extended to prevent the passing of contraband which prevents the fans from blowing air in to the cells.

The Sun Unit also has double bunks in each cell with no guardrails. The cells do not have tables or chairs, leaving only the lid-less toilet on which to sit.

Patin alleges that, when he arrived at RCC on March 2, 2009, he was assigned a social worker and assigned to see the prison psychiatrist every few weeks or months as he has for the past 21 years in the prison system. He was told that his mental health condition would be kept confidential. However, at RCC the prison has an open door policy in the mental health unit which violates his confidentiality. He complains that other prisoners and prison staff can see and hear everything. He alleges that this is psychological harassment and humiliating for him.

Patin next complains that RCC no longer keeps ambulances stationed at the prison. Instead, outside services must be called if there is an emergency which can cause delays in getting inmates to the nearest hospital. He also complains that the prison's emergency vans cause unnecessary risk to prisoners since there are no seatbelts and the officers are not trained as EMTs or trained to do emergency driving.

Patin also claims that prisoners are subjected to cruel and unusual punishment and hardship because they are required to return to their tier for head counts, even if they are on the toilet, in the shower, or on the telephone at the time. He further alleges that officers sometimes insult inmates who are caught in these compromising positions. They also force inmates into their cells to sit until the staff is satisfied with the count.

Patin next complains that prison officials allow the field crews to grow vegetables, used to feed the prisoners, within 20 feet or 40 yards on either side of the main sewer treatment plant. He believes this has caused the vegetables he and the other inmates eat to be contaminated. He also complains that the sewer traps are only 15 feet from each of the units' dormitories. The inmates often have to clean these traps without any protection, and the smell seeps into the windows and doors for all of the inmates to smell.

He also complains that the security staff eat one to three meals a day at the prison, often causing the kitchen to run out of certain food intended for the inmates and having to come up with substitute provisions. He complains that these meals are at the State's expense. Also, the inmates on the special diet line have to wait for the staff to eat before being fed. He also complains that the staff will throw away food that is not served to them instead of passing it on to feed the inmates. They also will not allow inmates to share food from their plates with other inmates.

He further alleges that the food line servers are not required to where clean aprons. They often wear dirty white shirts that are untucked and fall into the food being served. The servers also wipe their sweaty faces with their shirt sleeves and arms without regard for whether the sweat can drip into the food or beverages.

He also complains that the rice sometimes is gummy, and the good portions of it are put aside for the staff. He further alleges that the prison cooks lack expertise and guidance to prepare proper diet food to conform with the prisoner's medical and nutritional needs. He also complains that there is no dietician on staff.

Patin further alleges that the prison's personal strip search policy after family visitation is unconstitutional. He alleges that he and the other inmates are required to have a full cavity strip search to check for contraband after visiting with family, friends and counsel. He indicates that the inmates must remove their clothing, bend over, and spread their buttocks for visual inspection. This is done in front of a camera. He claims that the security officers sometimes grin, frown, or shake their heads and later make comments to other prisoners about the inmate.

He argues that these searches are unnecessary since it would be too difficult for an inmate to hide contraband in his rectum without being noticed during visitation. In addition, the visitors are also searched by metal detectors, by hand, and by drug dogs before they are allowed in the visitation shed. He contends that even the contact visits take place in a small area and are constantly monitored.

Patin complains that the prison officials have combined two dormitory recreation rooms as a result in an increase of 13 or more prisoners per dorm and this violates his right to have sufficient seating and space under the Eighth Amendment. Patin alleges that the prison increased each of the four units by at least 13 inmates to a total of 79 inmates per dormitory. They also combined two of the recreation rooms on each unit. These rooms now have 22 long benches, 132 headphone jacks for the television, and six four-seat tables to accommodate 158 inmates at a time. Most of the short

term inmates play chess, dominoes, cards, and checkers and there is no room for other inmates to sit at the tables to do legal work.

Patin alleges that the prison has a policy of accepting anonymous letters from confidential informants in the prison, who lie about other inmates they do not like. As a result, the accused prisoners are placed on extended lockdown pending the investigation. As a result, the inmates lose their bed location and possibly get moved to a new dorm, even if the charges are eventually dismissed. The convicted inmates will be sent to a working cell block and lose their original dorm assignment, tobacco products, and stored food and beverage items. If the inmate is sentenced to extended lockdown, he will lose those listed items and his clothing, radios, magazines, pictures and books, even if the prisoner later wins his appeal.

Patin further alleges that he and other prisoners are required to clean their footgear in plastic gallon drums when they return from the field. The water becomes filthy and may contain pesticides. They then must walk in their socks several feet to be frisked by security staff. In the meantime, the inspecting guards also throw the inmate's boots into the wet dirty grass to conduct the frisk. He claims that this is an unsanitary conditions in violation of the Eighth Amendment.

He also alleges that the increase in the number of inmates in each dormitory has resulted in the decreased ability to obtain ice and caused a reduction in the call times to 4:00 p.m. and 8:00 p.m. He further complains that the staff can get as much ice as they want at anytime.

Patin next contends that the prison has a policy of requiring the inmates to make their beds with two sheets and a blanket in a military style, even when it is hot weather. He believes that this is meant as punishment.

Finally, Patin alleges that the totality of the conditions at RCC are atypical and cause a hardship on him in violation of the Constitution. He indicates that he was transferred to RCC, a medium security prison, from the Louisiana State Penitentiary, a maximum security prison. RCC has windows that do not open and close from the inside, and instead must be closed from the outside when the security staff allows it. The bathrooms are not ventilated and hold condensation. The plumbing fixtures are corroded with black, brown and green substances on them.

He further suggests that the Warden forces inmate clubs to donate a portion of their funds to outside causes, such as tragedy relief and community little league, but they are not allowed to give to the prison population except a coke and a bag of popcorn twice a year. The Warden took a total of $1400 in 2010 from the inmate Jaycees Club and threatened to fire the club's sponsor and president if they complained about it.

He complains that the inmates are not allowed to have fundraisers, but the prison administration and other outside groups are allowed to sell food from chain restaurants to the inmates to raise money.

He complains that the inmates will dress for bed to sleep under the fans only to awaken in the cold to find that the blowers had been turned on during the night. He believes the staff does this to cause the inmates to get sick.

He also complains that the prison has only eight televisions stations in contrast with other DOC prisons who have at least forty. Additionally, he alleges that if an inmate gives his clothing to another inmate upon his release, the receiving inmate is written up for theft, because they don't have a receipt for the new clothes. He also adds that the prison canteen sells defective clothing. He

also complains that some of the prison weight equipment is homemade, and the benches are heavier than the weight bar.

He continues on to complain that the head and assistant wardens at RCC are racist towards black security officers and also towards black prisoners. He notes that there have been only four black lieutenants since April of 2002. Lastly, as a general condition complaint, he contends that field workers have to use the bathroom in the field and they will be placed in lockdown for a Rule 28 aggravated work offense if they complain.

Patin goes on to complain that there are cats living at the prison who are fed and cared for by the inmates and staff and without washing their hands afterwards, these same people deal with the ice and food and food utensils, and other shared items at the prison.

Patin also presents other complaints regarding improprieties by "the defendant," without identifying to which defendant he refers.[2] These allegations include that he maintains false programs records to continue receiving grant money for prisoners no longer in the programs, he pockets all or a portion of the money for meals sold to inmates and staff and received from fundraisers, he removed a majority of the law books and sold them to family and friends, he broke a hot water tank and sprayed water in the state house to recover insurance proceeds to remodel his office, he gets kick backs through state-owned credit cards, he purchases food through the prison for personal use, he has supplied himself with television and entertainment equipment with state funds, he pocketed money donated to the prison to build a chapel at RCC and a pet shelter, he takes money from the State to purchase new items for the prisoners and instead has the old items repaired, and he makes money off the fees paid by inmates for medical care.

---

[2]Rec. Doc. Nos. 29-30.

As relief for his suffering through these conditions, Patin seeks declaratory and injunctive relief to have the conditions corrected. He also seeks compensatory damages in the amount of $1,000.00 per claim against each defendant, and $500.00 in punitive damages per claim against each defendant.

## II. Standard of Review for Frivolousness

Title 28 U.S.C. §§ 1915A and 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.   Analysis

### A.      No Standing to Bring § 1983 Action as to all Claims Raised

Patin has presented many very general and conclusory complaints about life in RCC, most of which do not indicate that any of the deprivations or conditions have caused him personal harm or impact. This failure implicates the standing doctrine, which derives from the Constitution's restriction of federal court jurisdiction to "cases and controversies." U.S. Const. art. III, § 2, cl.1. Similarly, the Fifth Circuit has held that persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, and not the rights of others. *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986).

Thus, to show that he has standing, a plaintiff must demonstrate three things: (1) an injury in fact or a harm that is "actual or imminent, not conjectural or hypothetical," (2) causation, and (3) redressability. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Absent some allegation of personal harm to him or a violation of his constitutional rights, Patin has failed to satisfy the first element. He, therefore, has failed to show that he has standing to pursue the claims which allege harm to the general population of inmates and none specific to himself. *See ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (observing that the standing doctrine "applies to every claim sought to be litigated in federal court"). Without standing, Patin's claims are legally frivolous and fail to state a claim for which relief can be granted.

The claims addressing the general population can be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e. Out of

an abundance of caution, however, in the following pages, the Court will address each of his complaints as if he included reference to himself.

## B.     No Physical Injury to Support Recovery of Monetary Damages

Even considering those claims addressing the general population and those in which Patin addressed to himself, he has not alleged that any of the conditions described at RCC have caused him a physical injury as required to recover monetary relief under § 1983.  He complains only of discomfort and concedes in his pleadings that he has suffered absolutely no physical injury as a result of any of the conditions of which he complains.[3]  For this reason, he has failed to state a claim for which relief can be granted.

Under 42 U.S.C. § 1997e(e), an inmate cannot recover for "mental and emotional injury suffered while in custody without a prior showing of physical injury."  The United States Fifth Circuit Court of Appeals, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but it need not be significant.  *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003) (quoting *Harper*, 174 F.3d at 719, quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997), (where the Fifth Circuit first set forth its § 1997e(e) definition of physical injury)); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir.1999).

In this case, Patin has failed to allege any physical injury or illness to support a recovery under § 1983.  As a result, his claims seeking such relief should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

---

[3]This is bolstered by the arguments he includes in his request for a preliminary injunction.  Rec. Doc. No. 13.

### C. Alleged Misuse of Funds and State Property by "the Defendant"

As an initial matter, Patin presents 13 allegations of alleged improper activity by "the defendant."[4]  These activities range from the misuse of State funds to the misuse of State property at the prison.

Patin has not identified the particular defendant against whom these claims are asserted. Having named three, his claim is lacking in specificity.  Section 1983,  provides a federal cause of action against any <u>person</u>, who, acting under color of state law, deprives another of his constitutional rights.  42 U.S.C. § 1983; *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989).  A plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros*., *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk Country v. Dodson*, 454 U.S. 312 (1981).  Patin has not specified against which of the three named defendants he intended to assert these claims.

Furthermore, even if he had specified an actor, these allegations fail to present a violation of Patin's constitutional rights as required for a suit under § 1983.  Patin's allegations in this section of his complaint are at best conclusory and are speculative of matters to which a prisoner would not be privy and which are not related to Patin's status as a prisoner.  By the acts alleged, he does not present any violation of <u>his</u> federal constitutional rights or that any of the alleged improprieties impacted his protected rights or property in any way.  *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997) (merely alleging a constitutional violation or making a conclusory allegation is insufficient under § 1983).

---

[4]Rec. Doc. No. 1, pp. 29-30.

15

Instead, he focuses his claims on alleged embezzlement and misuse of funds and State property. While these allegations, if true, may address criminal activity, there is no private right of action under § 1983 where the activity did not directly violate the plaintiff's constitutional rights. *See Stern v. Epps*, No. 10-60662, 2012 WL 911889, at *3-4 (5th Cir. Mar. 19, 2012).

To the extent he may intend to allege that money due to him was improperly taken or embezzled, such a claim is not proper under § 1983. The deprivation or loss of an inmate's money or property, whether negligent or intentional, is barred from review under § 1983 where an adequate state post-deprivation remedy exists. *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984) and *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)); *accord Wilson v. Holt*, 158 Fed. Appx. 546, 546 (5th Cir. 2005). The Fifth Circuit has repeatedly recognized that Louisiana tort laws under La. Civ. Code art. 2315 *et seq*. provide an adequate remedy for both intentional and negligent deprivations of property. *Hutchinson v. Prudhomme*, 79 Fed. Appx. 54, 55 (5th Cir. 2003) (affirming dismissal of prisoner's claim "that prison personnel mishandled and embezzled funds deposited in his inmate account" because Louisiana law provides an adequate post-deprivation remedy); *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984).

These claims, even if urged against a particular defendant, are legally frivolous and fail to state a claim for which relief can be granted under § 1983. Patin's specific conditions of confinement claims are addressed later in this report.

### D. No Supervisory Liability

Patin has named three defendants, LeBlanc, Travis, and Tanner, each of whom are named as supervisory officials over RCC. LeBlanc is named solely as the Secretary of the DOC. Travis and Tanner are identified as wardens, with control over the RCC staff and facility. He has not alleged that any of these defendants have been involved in or knew of the conditions of which he complains.[5]

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under §1983. A state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). For this reason, a supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).

Secretary LeBlanc and Wardens Travis and Tanner cannot be held liable for the actions of their subordinates at RCC. Under a broad reading, Patin simply imputes liability to LeBlanc, Travis and Tanner as the superior officials. This type of vicarious liability is not sufficient to state a non-frivolous claim under § 1983.

---

[5]This is with exception to the claims raised against "the defendant" discussed above, and which do not raise constitutional issues.

In the alternative, supervisory liability may exist under § 1983 "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). In the instant case, Patin has not pointed to a particular policy in place at RCC that has violated his constitutional rights. His claims address the general conditions at the prison and not particular policies. His claims against the defendants are frivolous and fail to state a claim for which relief can be granted.

In addition, a supervising officer not personally involved in the acts that deprived the plaintiff of his constitutional rights also may be liable under § 1983 if: (1) the supervising officer failed to train or supervise the subordinate officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's constitutional rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (citations omitted). Allegation and proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that a lack of training or supervision caused a violation of his constitutional rights. *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir.1998); *Thompkins*, 828 F.2d at 304-05). Finally, the inadequacy of the training "must be obvious and obviously likely to result in a constitutional violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

Patin has not in any way alleged that the defendants failed to train or supervise the staff and guards at RCC. He simply alleges that the conditions at RCC are not satisfactory. As will be discussed in more detail in the following sections of this Report, Patin has not alleged a non-

frivolous claim that any constitutional right was violated as a result of the conditions at RCC. Without some allegation of a failure to train or that a violation occurred, there is no alleged error of which the training or supervision would be the basis for liability that could be imputed to the defendants as supervisors. For these reasons, Patin has not alleged grounds to support either of the alternative grounds for supervisory liability.

The Court finds that Patin's claims against Secretary LeBlanc and Wardens Travis and Tanner are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e. The claims should be dismissed.

Should a reviewing court find some basis for a claim against these supervisory officials, in the interest of plenum, the Court will discuss each of the issues addressed to establish the basis for the conclusion that Patin's claims are frivolous and otherwise fail to state a claim for which relief can be granted under § 1983.

**E.     Conditions at RCC are Dissimilar to Those at other DOC Facilities**

Patin repeatedly complains that the conditions at RCC, in the treatment of inmates and the conditions of the physical plant and services, are inferior to or dissimilar to those conditions at other DOC prisons, including the Louisiana State Penitentiary where he was before his transfer to RCC.

Under a broad reading, Patin's claims address both the Due Process and the Equal Protection Clauses. It is, however, well settled that a prisoner has no protected right arising from the Constitution itself, or from any protected liberty or property interest arising from state law, to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215,

224-25 (1976); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995); *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989); *Maddox v. Thomas*, 671 F.2d 949, 950 (5th Cir. 1982). "That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." *Jackson*, 864 F.2d at 1250. Patin has not alleged a cognizable due process violation.

To state an equal protection claim, a plaintiff's allegations must have two prongs: (1) "that he received treatment different from that received by similarly situated individuals" and (2) "that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). As mentioned above, Patin generally complains that the conditions and amenities at RCC, a medium security prison, differ from those in other DOC prisons, specifically at the Louisiana State Penitentiary, a maximum security facility. However, that is not the relevant comparison, because prisoners at different facilities are not "similarly situated" for equal-protection purposes. See *Hill v. Stephens*, No. 08-5233, 2009 WL 1808596, at *2 (E.D. La. June 18, 2009) (Order adopting Partial Report and Recommendation); *Treece v. Andrews*, No. 05-30895, 2006 WL 2686676, at *1 (5th Cir. Sept. 20, 2006); *Woods v. Collins*, No. 95-10432, 1995 WL 581879, at *2 (5th Cir. Sept. 21, 1995); *Biliski*, 55 F.3d at 162; *Clark v. Foti*, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995); *Hymel v. Champagne*, No. 07-450, 2007 WL 1030207, at *2 (E.D. La. Mar. 28, 2007); *Santos v. La. Dep't of Corr. Secretary*, No. 95-4215, 1996 WL 89260, at *5 (E.D. La. Feb. 28, 1996).

Patin does not allege that he is treated differently than those individuals with whom he is "similarly situated," i.e. the other inmates at RCC. On the contrary, with respect to the general

conditions at RCC, he acknowledges that the other inmates at that facility are subject to the same alleged restrictions and deprivations, and he does not allege that he is treated any differently than other RCC inmates in his same classification. He also has not pointed to any discriminatory impetus behind his transfer to RCC or the conditions in which he is housed at RCC as applied to any identifiable group. He has failed to state a claim under the Equal Protection Clause based on the general conditions of his confinement.

These claims should be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

Nevertheless, in affording Patin every benefit, the Court will review each of his specific complaints about the conditions of his confinement at RCC.

**F.      Standards Applicable to Conditions of Confinement Claims**

Patin has listed numerous complaints about the general living conditions at RCC as compared to other facilities he has been in, including the Louisiana State Penitentiary. He has provided a list of his complaints pointing to specific nuisances he encounters at RCC. While each of his complaints is addressed below, the Court has consolidated related issues where appropriate under the law.

In general, his conditions of confinement claims are governed by the Eighth Amendment. "Prison conditions constitute cruel and unusual punishment if they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'" *Hamilton v. Lyons*, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Hutto v. Finney*, 437 U.S. 678, 687 (1978).

Like other Eighth Amendment claims, a conditions of confinement claim must satisfy tests for both objective and subjective components. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *accord Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *Downey v. Denton County*, 119 F.3d 381, 385-86 (5th Cir. 1997). To succeed on a claim of unconstitutional conditions of confinement, this Court "must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." *Hudson v. McMillian*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303). If the Court finds that either the subjective or objective component of the test is not met, it need not address the other component. *Davis*, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in *Wilson* noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. at 9.

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard. *Wilson*, 501 U.S. at 303. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

*Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under

exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be

inferred by the obviousness of a substantial risk." *Id.* (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a
> <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a
> known or obvious consequence of his action. . . . The "deliberate indifference"
> standard permits courts to separate omissions that "amount to an intentional choice"
> from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County*

*Comm'rs v. Brown*, 520 U.S. 397 (1997)) (citations omitted) (emphasis added).

In considering Patin's claims, the Court is reminded of the Supreme Court's statement in

*Wilson*:

> Nothing so amorphous as "overall conditions" can rise to the level of cruel and
> unusual punishment when no specific deprivation of a single human need exists.

*Wilson*, 501 U.S. at 304.

Patin's claims address mere discomforts imposed as part of his status as an inmate, and an

inmate in a disciplinary or working cell block as a result of his failure to comply with prison rules.

His desire to live more comfortably is not a constitutional issue. Serving time in prison "is not a

guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685

F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate

prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing

*Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). Patin

does not allege that he has suffered any injury or ailment, other than inconvenience, as a result of

the conditions of at RCC. For the reasons following, none of his claims, considered alone or

together, invoke the constitution or state a non-frivolous claim under § 1983.

### 1.     Verbal Comments by Officers

Throughout his complaint, Patin alleges that the prison guards and staff occasionally make comments to the prisoners which, under the broadest of readings, he describes as insulting or abusive.  Claims of verbal insults, threats and derogatory remarks are not cognizable under § 1983. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995).  The Fifth Circuit has stated that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" (citation omitted) *Id*.; *accord Watson v. Winborn*, 67 Fed. Appx. 241, 241, 2003 WL 21108479 (5th Cir. Apr. 21, 2003); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Vessell v. Gusman*, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing *Calhoun*, 312 F.3d at 734; *Siglar*, 112 F.3d at 193; *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).

It is well settled that "[c]laims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment. . . ." *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994).  In this case, Patin's broad allegations of verbal abuse do not rise to the level of a constitutional violation.  These claims should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 2.     Uncomfortable Recreation Rooms, Inadequate Television Access, No Tables or Chairs in the Cells

Patin alleges that the prison added inmates to each of the dormitories and combined the recreation rooms between the two sets of dormitories to accommodate the change.  He complains that this has reduced the available seating per inmate.  He further complains that there are no chairs or tables in the cells for an inmate to use when seating is not available in the recreation area.  He also

complains that the televisions in the recreation room only carry eight cable channels, which is fewer than those available in other DOC prisons.

These concerns are no more than trivial inconveniences and do not come close to stating a constitutional violation. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. at 9 (quotations and citations omitted); *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989) (the Constitution does not protect against conditions of confinement "which cause mere discomfort or inconvenience"). "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment." *Lee v. Hennigan*, 98 Fed. Appx. 286, 288 (5th Cir. 2004) (citing *Bell v. Wolfish*, 441 U.S. 520, 537, 539 (1979)).

Patin has not alleged a violation under the objective component of the Eighth Amendment. These claims should be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 3.        Inmates are Placed in the Yard When Not on Duty

Patin complains that inmates are required to remain outdoors for several hours each day, even when they are not on field duty. Patin concedes that the off-duty outdoor time periods coincide with the cleaning and inspection of the tiers. Plaintiff has not alleged facts sufficient to suggest that his rights were violated while he was required to remain outdoors on his days off of work.

Patin has not alleged that the requirement was intended as an indifference to his physical well-being. Instead, he alleges that the time he and other inmates were outside, the prison staff and

other assigned inmates were cleaning the tiers and inspecting the facilities. Unlike cases where excessive outdoor exposure has been considered, he does not allege that he was forced to remain indefinitely in inclement weather, denied bathroom facilities (discussed later in this report), or placed at risk as would be required to present a non-frivolous claim.

Nothing Patin describes arises to the severe level described in the few cases where constitutional violations occurred when inmates were left outdoors for excessive periods of time. *See, e.g.*, *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (inmates were forced to sleep over night outside in the cold weather without bathroom facilities). Inmates have endured more severe outdoor conditions for longer periods without the federal court's having found constitutional violations compensable under § 1983. *See, e.g.*, *Gunn v. Tilton*, No. 08-1039, 2011 WL 1121949, at *4 (E.D. Cal. Mar. 23, 2011) (no violation where inmate remained outside for six hours in temperatures ranging from 52 to 79 degrees and without access to water, shelter or sanitation facilities); *Reyes v. Kirkland*, No. 08-0813, 2010 WL 3398486, at *6 (N.D. Cal. Aug. 27, 2010) (no violation when prison officials forced plaintiff to stay outside for 14 hours in his underwear in the cold during emergency cell searches without food was "inconvenient and painful" but was "not sufficiently serious to warrant relief under *Farmer*."); *Mays v. Springborn*, 575 F.3d 643, 648-49 (7th Cir. 2009) (prisoner's complaint about inadequate winter clothing "did not show that he was forced to be in the cold for long periods of time or that he suffered anything more than the usual discomforts of winter.")

Patin has not alleged an objectively serious deprivation of his rights, nor has he described behavior on the part of the defendants that rises to the level of deliberate indifference to his well-being. Instead, Patin describes the type of "occasional discomfort" that is "part of the penalty that

criminal offenders pay for their offenses against society." *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) (quoting *Rhodes*, 452 U.S. at 347).

These claims should be dismissed with prejudice for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 4.      Inmates Provided only Limited Bathroom Access During the day

Patin also complains that, when the inmates are outside, whether working or waiting, they have only limited access to bathroom facilities during the work week and are sometimes required to relieve themselves outdoors. He also acknowledges that the inmates are allowed into the tiers at certain times to use the bathrooms. He simply suggests that these periods are too limited in number, and are inadequate for the needs of the inmates.

"[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)); *accord Benshoof v. Layton*, 351 Fed. Appx. 274 (10th Cir. 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004). The United States Fifth Circuit Court of Appeals has observed that "'certain prison conditions [are] so "base, inhuman and barbaric" that they violate the Eighth Amendment.'" *Palmer*, 193 F.3d at 352 (quoting *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971)). This includes the deprivation of the basic elements of hygiene, including access to bathroom facilities. *Id*.

In *Palmer*, the inmates were denied access to any bathroom facilities for 17 hours while forced to sleep over night outside in extremely cold weather. Unlike those plaintiffs, however, Patin has not alleged that he was altogether denied access to bathrooms for any significant period of time. He merely complains that the bathroom breaks are scheduled at certain intervals, which he believes

are too far apart and which sometimes results in other inmates having to use the bathroom outdoors, or in allowing themselves to become soiled if too embarrassed to use the bathroom outdoors. This is nothing more than an inconvenience which Patin has not linked to any personal risk or unconstitutional indifference by the prison officials.

As one court has held, the mere fact that bathroom access is limited or even results in inmates' soiling themselves, does not necessarily amount to a constitutional deprivation:

> The fact that inmates may occasionally soil themselves while attending to their bodily functions does not automatically mean that they have been subjected to inhumane conditions. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir.1998). Such unfortunate incidents cannot be avoided at times but can be remedied by simply cleaning the affected area. No constitutional violation is established unless there are facts that show that the inmates are not given an opportunity to clean themselves after having an accident. *See Bradley v. Puckett*, 157 F.3d 1022 (5th Cir. 1998) (handicapped inmate stated claim by alleging that he was placed in close confinement and effectively prevented from showering for two months). [Petitioner] does not allege that any inmate has had to endure a prolonged period of being dirty and has failed to establish that there is any legal basis to support his argument regarding hygiene. *Id. See also Vacca v. Scott*, 119 Fed. Appx. 678, 2005 WL 102995 (5th Cir. Jan 19, 2005) (inmate who was repeatedly denied access to bathroom failed to establish Eighth Amendment violation).

*Jernigan v. Dretke*, No. H-04-4672, 2005 WL 1185627, at *2 (S.D. Tex. Apr. 29, 2005); *see also Decker v. Dunbar*, 633 F. Supp.2d 317, 341-42 (E.D. Tex. 2008) (inmate urinated on himself after being denied access to a restroom while prisoner count was completed; verification of count was a reasonable basis for delay and did not show deliberate indifference; inmate did not suffer more than *de minimis* physical injury), *aff'd*, 358 Fed. Appx. 509 (5th Cir. 2009), *cert. denied*, __ U.S. __, 131 S. Ct. 96 (2010), *reh'g on cert. denied*, __ U.S. __, 131 S. Ct. 980 (Jan. 10, 2011).

Patin does not allege that the scheduled bathroom breaks posed a risk to his current or future health. *Vacca*, 119 Fed. Appx. at 679. His conclusory allegations about the bathroom usage are insufficient to give rise to a § 1983 claim. *Id.*

These claims should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 5. **Inadequate Fire Safety Equipment and Improper Electrical Wiring**

Patin claims that the prison does not have enough smoke detectors or sprinklers for fire safety. He also complains that the electrical wiring is inadequate, and under a broad reading, also poses a fire or safety hazard.

As with any safety risk, the Eighth Amendment requires that prison officials provide adequate fire safety for inmates. *Johnson v. Tex. Bd. of Crim. Justice*, 281 Fed. Appx. 319, 321 (5th Cir. 2008) (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *modified on other grounds*, 688 F.2d 266 (5th Cir. 1982)). Patin, like the plaintiff in *Johnson*, has not alleged a specific risk of harm or that any actual harm has occurred as a result of the fire and electrical system at the prison. In addition, "[w]hile fire and electrical codes can be helpful in determining whether a lack of fire safety can constitute a violation of the Eighth Amendment, they are not determinative, and the Eighth Amendment does not require that prisons meet fire and electrical codes." *Johnson*, 281 Fed. Appx. at 322 (citing *Ruiz*, 679 F.2d at 1153 and *Giovanni v. Lynn*, 48 F.3d 908, 912-13 (5th Cir. 1995)). Patin's allegations are frivolous and do not state a claim for relief under § 1983. They should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e

### 6. **Inadequate Law Library, Legal Assistance, and Supplies for Legal Work**

Patin alleges that the prison's law libraries are not adequately supplied with books nor are they large enough to accommodate the inmates seeking to use the facilities. He also complains that not all of the legal assistants are knowledgeable or available to assist inmates at convenient times.

He also seems to allege that he does not have regular access to ink pens or other materials or space that would be more conducive to his legal research needs.

Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Dickinson v. TX, Fort Bend County*, 325 Fed. Appx. 389, 390 (5th Cir. 2009); *Sandoval v. Johns*, 264 F.3d 1142, No. 00-41276, 2001 WL 822779, at *1 (5th Cir. June 29, 2001) (Table, Text in Westlaw); *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998); *Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996). However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Vaccaro v. United States*, 125 F.3d 852, No. 96-60838, 1997 WL 574977, at *1 (5th Cir. Aug. 28, 1997) (quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993)); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

To state a claim that his constitutional right of access to the courts was violated, the inmate must allege and demonstrate that his position as a litigant was actually prejudiced. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Cochran v. Baldwin*, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); *Smith v. Polunsky*, 233 F.3d 575, 2000 WL 1468717, at *1 (5th Cir. Sep. 5, 2000) (Table, Text in Westlaw); *Eason*, 73 F .3d at 1328. The inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.

In this instance, Patin does not allege the essential elements of a First Amendment claim detailed above. He does not allege that he was hindered in any particular civil or criminal

proceeding because of the law library and assistance at RCC.  He has not alleged any actual legal prejudice of the type required by *Lewis* that was caused by any action or omission at the jail. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains."  *Hart v. O'Brien*, 127 F.3d 424, 446 (5th Cir.1997), *abrogated in part on other grounds as recognized in Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999); *accord Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000).  In *Lewis*, the Supreme Court made clear that an inmate must suffer an actual injury to state a claim for denial of his right of access to the courts.  Patin has made no such allegation here.

For the forgoing reasons, his claim concerning inadequate access to the law library at RCC is legally frivolous and fails to state a § 1983 claim upon which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 7.    Inadequate Rehabilitation Programs for Long-Term Prisoners

Patin alleges that RCC does not provide him with adequate opportunities to participate in rehabilitation programs that he believes will assist him in his efforts to obtain release on parole when he becomes eligible in 2013.

Patin has failed to state a claim for violation of his equal protection or due process rights, because inmates have no constitutional right to participate in rehabilitative or educational programs while incarcerated.  *McBride v. Powers*, 364 Fed. Appx. 867, 870-71 (5th Cir. 2010) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)).  This claim is frivolous and otherwise fails to state a claim for which relief can be granted and should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

**8.    Discrimination in Job Placement Due to Prior Disciplinary Record**

Patin claims that he has been denied certain job placement within the prison based on a prior disciplinary conviction apparently related to sexual assault or harassment of a female prison staff member.  He claims that the disciplinary report was based on a false claim by another inmate, but is still used against him to prevent him from certain job opportunities.  He also alleges that other inmates with similar disciplinary records and even those with criminal rape convictions are allowed in those same jobs.

As an initial matter, Patin does not state a cognizable claim arising from the disciplinary conviction allegedly based on a false accusation by another inmate.  In order to bring a § 1983 claim based on the filing of an allegedly false disciplinary charge, a prisoner must show favorable termination of the charge.  *Woods v. Smith*, 60 F.3d 1161, 1165 n.16 (5th Cir. 1995) (citing *Ordaz v. Martin*, 5 F.3d 529, 1993 WL 373830 (5th Cir. Sept. 15, 1993) (Table, Text in Westlaw)).  Patin clearly indicates that he was convicted of the charge, was assigned punishment for it, and complains that he still suffers the effects of it.  He has not alleged a favorable disposition of the charge.

Also, a prisoner's claim that he was charged with a disciplinary infraction that he did not commit also does not state a deprivation of due process.  *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984); *Freeman v. Rideout*, 808 F.2d 949 (2nd Cir. 1986).  "If the disciplinary proceeding was otherwise fair and adequate, the opportunity that it afforded [the plaintiff] to clear himself of misdeeds which he did not commit sufficed."  *Id*., at 254.  Patin does not challenge the disciplinary process in this manner and has failed to state a due process violation for this Court to consider further.  *See Sandin v. Connor*, 515 U.S. 472, 481-83 (1995).  The Fifth Circuit has held that "[I]n the wake of *Sandin*, . . . 'administrative segregation, without more, simply does not constitute a

deprivation of a constitutionally cognizable liberty interest.'" *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995)). Patin has no non-frivolous claim to urge here related to the underlying disciplinary conviction.

To the extent he alleges discrimination in his job placement based on his disciplinary record, his claim is also frivolous. The Fifth Circuit has held that the denial of the ability to participate in work programs does not amount to cruel and unusual punishment. *James v. Hertzog*, 415 Fed. Appx. 530, 533 (5th Cir. 2011). In addition, prisoners do not constitute a suspect class for purposes of the Equal Protection Clause of the Fourteenth Amendment. *See Harris v. McRae*, 448 U.S. 297, 323 (1980); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997).

As such, with respect to disparate job assignments for prisoners with prior record of sex crimes and disciplinary offenses, the prison officials need only have any rational ground for their discretionary decision regarding job assignments. *Unrah v. Moore*, 326 Fed. Appx. 770, 772 (5th Cir. 2009). Here, Patin has himself identified the rational ground to be his prior disciplinary record, which included a sex offense against a female officer at a prison.

Based on the complaint, Patin has failed to state a non-frivolous claim. His claim should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### 9. <u>Privacy Issues</u>

Patin identifies several privacy concerns he has at RCC. He complains that the guards sometimes hand mail envelopes to other inmates for assistance in reading the addressee's name or to pass mail onto another inmate. He suggests that this would allow other inmates to read the return addresses for the family, friend or attorney sending the mail. He also complains that the bathrooms and the tiers are monitored by cameras and microphones which denies the inmates' privacy in these

areas. He further alleges that he is not provided privacy during mental health interviews, because the counselors are required to leave their office doors opened during the sessions. He contends that this allows other inmates and prison staff to hear his conversations with the counselor.

### a. Surveillance in the Bathrooms and on the Tiers

First, "prisoners have no legitimate expectation of privacy" in their living area. *Hudson v. Palmer*, 468 at 530. The Supreme Court has explained that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.*, at 527-28. Something Patin apparently forgets is that the "[l]oss of freedom of choice and privacy are inherent incidents of confinement." *Bell*, 441 U.S. 520, 530; *accord Hudson v. Palmer*, 468 U.S. at 528.

The Fifth Circuit also has held that surveillance for security reasons prevail over the limited bodily privacy rights of inmates and does not offend an inmate's Equal Protection rights, even when surveillance can be done by the guards of the opposite sex. *See Oliver v. Scott*, 276 F.3d 736, (5th Cir. 2002) (cross-sex surveillance for security purposes on tiers and in showers did not violate the inmate's very limited bodily privacy rights); *Sinclair v. Stalder*, 78 Fed. Appx. 987 (5th Cir. 2003); *cf. Ferrell v. Bowles*, 91 Fed. Appx. 949, 950 (5th Cir. 2004). Patin recognizes in his complaint that the cameras and microphones are placed on the tier for security surveillance. "[G]reat deference" is given to "prison administrators' judgments regarding jail security." *Oliver*, 276 F.3d at 745. Patin does not suggest that the surveillance equipment is present for any reason other than the maintenance of jail security. His claims are therefore frivolous. *Accord West v. Parker*, 68 F.3d 466, 1995 WL 581496, at *1 (5th Cir. Aug. 23, 1995) (Table, Text in Westlaw).

"Because the need to watch prisoners closely is a legitimate institutional concern, a prisoner is entitled to little if any privacy, even when using the bathroom or taking a shower." *Sanders v. Kingston*, 53 Fed. Appx. 781, 784 (7th Cir. 2002). As the Supreme Court has noted: "We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security." *Hudson v. Palmer*, 468 U.S. at 528. As noted above, this is true regardless of whether a prisoner is asserting a right to privacy under the Fourth or the Fourteenth Amendment. *See Oliver*, 276 F.3d at 744-45; *Johnson v. Phelan*, 69 F.3d 144, 145-47 (7th Cir. 1995).

Patin has failed to state a non-frivolous claim. His claim should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### b.      Other Inmates Viewing Mail Envelopes

Patin complains that the guards sometimes call upon inmates to assist in the mail pass-out. He complains that this provides an opportunity for inmates to make note of who is sending mail to another inmate and the address of the sender. Patin has failed to point to any identifiable constitutional violation or protected right pertaining to the exterior of the envelope of mail received by a prisoner. This Court has searched the reported cases from around the country and the United States Supreme Court and has been unable to locate any such recognized right to privacy on the information placed on the outside of an envelope. Without some cognizable constitutional violation, or specific danger to him, Patin has not stated a non-frivolous claim under § 1983. His claim should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### c.     <u>Open Doors During Mental Health Sessions</u>

Patin complains that the counselor's are required to leave their office doors open for safety reasons during mental health counseling sessions. With regard to medical information, the federal courts have held that a prisoner only has a limited privacy right. *See Doe v. Delie*, 257 F.3d 309, 315-16 (3d Cir. 2001); *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) (concluding that a gratuitous disclosure of an inmate's confidential medical information as humor or gossip is not reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy). However, there is no bright line and the issue remains undecided in other courts. *See*, *e.g.*, *Simpson v. Joseph,* No. 06-C-200, 2007 WL 433097, at *34-35 (D. Wis. Feb. 5, 2007) (noting that whether prisoners have privacy rights in their prison medical records is an open question in the Seventh Circuit); *Richey v. Ferguson*, No. 05-5162, 2007 WL 710129, at *22 (W.D. Ark. Mar. 6, 2007) (issue of an inmate's medical privacy rights is undecided in the Eighth Circuit); *Lankford v. City of Hobart*, 27 F.3d 477 (10th Cir. 1994) (same); *Mares v. ConAgra*, 971 F.2d 492, 496 (10th Cir. 1992) (same). Some federal courts have held that a prisoner generally does not have a constitutional privacy interest in his medical conditions which, even though potentially embarrassing, are not of the same excruciatingly private and "intimate nature" of such conditions as HIV and transsexualism. *See, e.g.*, *Rodriguez v. Ames*, 287 F. Supp.2d 213, 220 (W.D.N.Y. 2003) (prisoner had no privacy interest in diagnosis of proctitis, nontoxic inflammation of the mucose tissue of the rectum, and internal hemorrhoids); *Webb v. Goldstein*, 117 F. Supp.2d 289, 298 (E.D.N.Y. 2000) (no privacy concerning treatment for various genital conditions).

Assuming, arguendo, that a privacy right exists at all, it could be impinged upon by prison officials if the official's action was "reasonably related to penological interests." *Powell,* 175 F.3d

at 112; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). Moreover, "[p]risoners cannot enjoy greater privacy protection than individuals in free society, and some amount of sharing of medical information in areas where it might be overheard by other patients - e.g., in hospital emergency rooms, school infirmaries, and the waiting room of a doctor's office - is commonplace." *Franklin v. McCaughtry*, 110 Fed. Appx. 715, 719 (7th Cir. Sept. 7, 2004) (citations omitted).

Patin's only complaint here is that, by leaving the doors opened, the discussions he has could potentially be overheard by others. There is no clearly defined law which would require the counselor's at RCC to speak with Patin in a particular setting or in extreme privacy. Furthermore, Patin concedes that the doors remain open for <u>security</u> reasons, which is a legitimate priority over his limited privacy interest. Patin also has not alleged that he has suffered any harm or that any of his medical information has been used against him by a guard or other inmate. He therefore has not alleged a non-frivolous claim arising from the open door policy utilized by the mental health counselor's at RCC. His claim should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 10. <u>Insufficient Supply of Ice and Limited Access to Drinking Water</u>

Patin alleges that, while ice is supplied each day, the inmates are not provided with enough ice to last for the number of inmates in each unit. He also complains that glasses of water are only provided with meals, which leaves inmates in segregation to drink from the faucets in between meals. Once again, Patin fails to point to more than an inconvenience in his desire to live more comfortably.

Patin concedes in his complaint that he has access to water for drinking throughout the day, albeit it from a faucet rather than a thermos. In addition, "foregoing ice cubes in one's drink do[es]

not jeopardize health or safety." *Stanley v. Page*, 44 Fed. Appx. 13, 15 (7th Cir. 2002) (citing *Farmer*, 511 U.S. at 837); *see also*, *Webb v. DeBoo*, No. 09-107, 2012 WL 1068213, at *10 (N.D. W. Va. Jan. 6, 2012) (". . . there is no constitutional right to ice on demand."). He has failed to allege a denial of one of life's necessities or identified a risk to his health to which the defendants were intentionally indifferent. His claim should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 11.  Corroded Plumbing Fixtures

Patin complains that the plumbing fixtures are corroded in his unit. He does not allege any dysfunction from the condition of the fixtures; he instead seems only to be dissatisfied with the appearance. This is not sufficient to allege a constitutional violation for which relief can be granted. *See Mahmoud v. Bowie*, No. 99-31255, 2000 WL 1568178, at *2 (5th Cir. Sept. 14, 2000) (affirmed dismissal of claim that shower was unsanitary, holding that the claim was "conclusional or de minimis" and did not rise to the level of a constitutional violation); *McCarty v. McGee*, No. 06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) (prisoner's claim that the shower was "covered in mold and fungus" failed to rise to the level of a constitutional violation); *Crook v. McGee*, No. 07cv167, 2008 WL 53269, at *2 (S.D. Miss. Jan. 2, 2008) (same). Although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." *McAllister v. Strain*, No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); *see also Wilson v. Lynaugh*, 878 F.2d at 849 & n.5 (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel").

Patin has failed to state a non-frivolous claim.  His claim should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### 12.  Not Given His Own Toothpaste

Patin complains that he is not provided with his own toothpaste supply.  Instead, toothpaste is dispensed with meals on the inmates' meal trays.  The seriousness of cases where inmates are denied necessities of life, basic sanitation supplies, and other items crucial to their basic human needs are greatly belittled by the absurdities of inmates like Patin who clog the courts with frivolous claims.  Patin has not alleged that he has been denied anything necessary for his survival and respect as a human.  He has access to toothpaste three times a day.  This is more than those inmates in other institutions who have to pay for such items and is more than most people in the free world use each day.  He has failed to show an indifference to his safety or risk to his health and well being.  This claim is frivolous and should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### 13.  Inadequate Ventilation on Tier and in Bathrooms and Air Blowers are Left on at Night

Patin next alleges that the ventilation system on the tier and in the bathrooms is inadequate.  In a rather contradictory manner, he claims that the air blowers on his tier work too well at night and cause the inmates to awaken cold.  He concedes, however, in another part of his complaint that he has a blanket on his bed year round.[6]

Once again, Patin suggests nothing more than his discomfort and unwillingness to conform with the inconveniences of group life in prison.  As has been resolved time and again, an inmate's discomfort caused by the ventilation and air systems does not amount to "'the denial of the minimal civilized measure of life's necessities' nor support an inference of deliberate indifference." *Farr*

---

[6]He complains in another section that he has to make his bed with a blanket year round.

*v. Rodriguez*, 255 Fed. Appx. 925, 927 (5th Cir. 2007) (quoting *Farmer*, 511 U.S. at 834) (internal quotation marks omitted)).  This claim is frivolous and fails to state a claim for which relief can be granted.  It should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### 14.    <u>No Guard Rails on Bunks</u>

Although he does not allege that he is in an upper bunk or a dangerous bunk, Patin complains that the prison bunks do not have guard rails.  To the extent he suggests that this could allow a careless inmate to be injured, he has not alleged a violation of his constitutional rights to form a basis for a § 1983 claim.  *Cf. Coon*, 780 F.2d at 1159 (persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights and not the rights of others).

Nevertheless, the claim of inadequate or unsafe furnishing would at best be one of negligence, which is not actionable under § 1983.  *See Cummings v. Gusman*, No. 09-144, 2009 WL 1649737, at *3 n.11 (E.D. La. Jun. 9, 2009) (citing *Eason*, 73 F.3d at 1329 n.3 ("[N]egligence is not a theory for which liability may be imposed under Section 1983."); *Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); and *Nesmith v. Taylor*, 715 F.2d 194, 195 (5th Cir. 1983) ("It is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right.")).  This claim is frivolous and fails to state a claim for which relief can be granted.  It should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### 15. <u>No Ambulances at Prison</u>

Patin alleges that RCC used to keep an ambulance on location to transport inmates to outside medical facilities when needed. He complains that the prison no longer maintains its own ambulance, which has resulted in inmates having to be transported by prison personnel instead of medically trained ambulance personnel or await the arrival of an ambulance from a private service.

Patin has failed to allege how this is any different from the delay suffered by millions of non-incarcerated persons. He has not alleged that the ambulance was removed from the prison to intentionally inflict pain or risk upon him. He does not allege that he has been denied medical attention or reasonable access thereto. He, in fact, has failed to allege that he has any medical need that would require his transport from the prison. He simply lists this as another comment about his discontent with life at RCC.

The standard for providing medical care to inmates under the Eighth Amendment was clearly established by the Supreme Court in *Estelle*, 429 U.S. at 97. In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.*

Patin has not presented any allegations sufficient to state a claim for denial of adequate medical care as the result of the prison's ambulance and medical transportation availability. His claims should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 16.     Inmates Have to Report for Roll Call

Patin next complains that inmates are required to report for roll call no matter what they are doing at the time. Patin apparently forgets that he is incarcerated and is not free from prison regulations necessary to maintain order and security in the prison. For it is well settled that "prison officials have a legitimate penological interest in maintaining security by verifying the identity of each inmate and ensuring he is actually still incarcerated and is in the proper cell before locking inmates in their cells for several hours. *Allen v. Thaler*, No. H-11-3121, 2012 WL 92562, at *5 (S.D. Tex. Jan. 10, 2012) (slip op.) (citations omitted). To accomplish order and maintain security, "prisoners must endure such disruptions." *Id.* (citing *Hudson v. Palmer*, 486 U.S. at 525-26) (prisoners have no reasonable expectation of privacy). The Fifth Circuit has also recognized that disruptions, including head counts during sleeping hours, does not violate the inmates' Eighth Amendment rights or contemporary standards of decency. *See Nirkirk v. Rodriguez*, 129 Fed. Appx. 103 (5th Cir. 2005); *Craft v. Johnson*, 69 Fed. Appx. 657, 2003 WL 21355856 (5th Cir. May 20, 2003); *see also*, *Atkinson v. Johnson*, 74 Fed. Appx. 365 (5th Cir. 2003).

Patin's status as an inmate requires that he cooperate with the legitimate tasks of the prison officials, especially those matters of security. His minor inconvenience when called to report for roll call, even if he is in the bathroom or shower, does not demonstrate that he is exposed to cruel

and unusual punishment. His claims should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

17. **Inmates Clean Sewage Traps Without Protection and it Causes Bad Odor in the Dormitories**

Patin alleges that "inmates" are required to clean out the sewer traps without protective clothing. He also complains that the clean-out operation often causes foul odors throughout the dormitories.

To state a constitutional violation regarding work conditions, a plaintiff must show that the work exposed <u>him</u> to a serious health or safety risk to which prison officials were deliberately indifferent. *Jackson*, 864 F.2d at 1246-47. "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). As discussed previously, "deliberate indifference" under the Eighth Amendment is "subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837; *Reeves*, 27 F.3d at 174. Under the *Farmer* standard, it is only under exceptional circumstances that a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id.*, at 837-88. With no allegation or showing of deliberate indifference, the plaintiff's claim is necessarily one of negligence, and no constitutional liability accrues. *See*, *e.g.*, *Strhan v. Scott*, 61 Fed. Appx. 919, 2003 WL 1108935 (5th Cir. Feb. 19, 2003) (no § 1983 liability where inmate not provided protective gear for exposure to "PVC"); *Jackson*, 864 F.2d at 1235 (no § 1983 liability where inmate not provided mask while working in corn dust); *Bowie v. Procunier*, 808 F.2d 1142 (5th Cir. 1987) (no § 1983 liability where inmate lost sight in one eye when not provided safety glasses while chopping wood); *Sampson v. King*, 693 F.2d 566 (5th Cir.1982) (no § 1983 liability where inmate forced to work in field where pesticides had recently been sprayed).

Patin does not allege that he has been required to work without protective gear or clothing or that he has suffered any physical impact from the prevailing odor caused by the admittedly necessary work done on the sewers. Patin does not allege that he made a request for safety equipment, or that the prison officials were aware of any particular danger faced by him as a result of exposure to the odor. In sum, Patin does not allege anything that would give rise to a constitutional violation arising from other inmates' work on the sewer traps or the temporary odor emanating therefrom.

His claim should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 18. Food and Food Sanitation

Patin lists several complaints about the food served at RCC. He alleges that vegetables are grown too close to the sewage treatment areas. For sake of argument, the Court will assume that these vegetables are served at the prison. He also claims that the food is served in an unsanitary manner by sweaty inmates. He complains that the prison does not have a dietician on staff to assure that the food served conforms to each inmates' dietary needs. He further alleges that the prison staff eats their meals at the prison and that they receive better service and better food than the inmates.

The Constitution mandates that detainees and inmates be provided "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Green*, 801 F.2d at 770 (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)) (footnote omitted); *see also Eason*, 73 F.3d at 1327 ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."). Prisons also are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume

it." *See French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied sub nom*, *Owens v. French*, 479 U.S. 817 (1986).

Patin does not allege that he has been denied adequate nutrition or that he has a dietary need that has not been met. This Court can find nothing that would require a prison to have a specially trained nutritionist on staff to inspect the food served to each inmate.

There also exists no law that would require that inmates be provided with the same food or food service as prison staff or prison officials. Patin is an inmate, and he is not entitled to anything more than the basic human comforts protected by the Constitution. He has failed to allege that he has not received food sufficient to meet that standard. *Rhodes*, 452 U.S. at 348 (conditions of confinement which do not lead to deprivations of essential food, medical care, or sanitation do not amount to an Eighth Amendment violation).

Patin has also alleged that the inmates serve the food without covering their arms, and they are sweaty because of the heat from the serving trays. Minor sanitation restrictions or problems, although admittedly unpleasant, do not amount to a constitutional violation. *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992); *Robinson v. Ill. State Corr. Ctr.*, 890 F. Supp. 715, 720 (N.D. Ill.1995). Furthermore, without some showing of physical injury resulting from the food service practices or potential contamination of the food, Patin has no basis for bringing a suit under § 1983. *See Jackson v. Taylor*, No. 05-823, 2008 WL 4471439, at *5 (D. Del. Sep. 26, 2008).

Patin has failed to allege a constitutional violation arising from the food and food service at RCC. His claims should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 19.    Strip Search Policy after Visitation

Patin next alleges that the strip searches conducted after contact visitations are unnecessary. He suggests that, since the visitors were already thoroughly searched, there is no need to conduct a strip or cavity search of the inmates.  He contends that, even if contraband was passed on, it would be too difficult for an inmate to hide the contraband in the open view of the visitation area.

The Fifth Circuit recognizes that a prisoner possesses a constitutional right to bodily privacy that "is minimal, at best." *Oliver*, 276 F.3d at 745.  The inmate "loses those rights that are necessarily sacrificed to legitimate penological needs." *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994).  The reasonableness is readily established, because "a prison administrator's decision and actions in the prison context are entitled to great deference from the courts." *Id.*, at 191.

In recent days, the United States Supreme Court has reiterated its long-standing doctrine that the federal courts should defer to the "expert judgment" of prison officials in devising "reasonable search policies to detect and deter possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, __ U.S. __, 132 S. Ct. 1510, 1517 (2012) (citing *Bell*, 441 U.S. at 546).  In *Bell*, the Supreme Court previously held that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546.

Here, Patin concedes that the searches are conducted in an effort to control the entry of contraband after visits with guests at the prison.  Although he disagrees with the idea, he apparently recognizes the legitimate reason for the search policy at RCC.  His allegations therefore present no cognizable claim of a constitutional violation.

His claims should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 20.     Inmates Walk on Wet Ground after Cleaning Work Boots

Patin complains that, after cleaning the wet work boots, some of the inmates have to cross an area of ground that is made wet by the very washing process.  Because the clean, wet boots are carried by the inmates, the inmates must traverse the wet ground in their socks.  He complains that this is too unclean to have to endure.

Patin has failed to allege an intentional indifference to a serious risk of harm to himself.  He does not allege that he has been required to walk on the wet ground in his socks.  He also does not allege that the activity is posed as punishment or designed to violate any particular constitutional right.  Instead, it is another in the long list of insignificant discomforts he faces in his work duties at the prison.  As Patin has been reminded in this report, the indicia of confinement which constitutes cruel and unusual punishment includes wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities.  *Wilson v. Lynaugh*, 878 F.2d at 848.  The Supreme Court has held that, to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.  *Rhodes*, 452 U.S. at 346-7.

Patin presents nothing here that would reach the level of a constitutional deprivation.  His claims should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

## 21.   Inmates Forced to Make Their Beds a Certain Way

Patin complains that the inmates in his unit are required to make up their bunks in a particular way each day, including a blanket, even when it is hot weather.  He does not allege how this prison requirement imposes upon him or his constitutional rights.

Federal courts do not interfere with the day to day administration of prisons, especially in those areas of order and cleanliness.  *Accord Turner*, 482 U.S. at 89 (courts do not interfere where administrative policy is reasonably related to legitimate penological interests); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977) (courts must give "appropriate deference to the decisions of prison administrators"); *Procunier v. Martinez*, 416 U.S. 396, 405 (1974) ("[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.").  Courts have recognized that, not only can inmates be required to make-up their bunks in accordance with prison regulations, but that no constitutional violation occurs when an inmate is punished for failure to comply with that rule.  *See*, *e.g.*, *Williams v. Scott*, 116 F.3d 1483, 1997 WL 312273, at *3 (7th Cir. Jun. 5, 1997) (Table, Text in Westlaw) ("Removing a prisoner's bedding during the day for the prisoner's refusal to make his bed, and returning it only at night, does not violate any contemporary standard of decency.) (citing *Hudson v. McMillian*, 503 U.S. at 8); *see also*, *Hill v. Smith*, No. 09-0811, 2010 WL 148272, at *3, *6 (W.D. La. Jan. 12, 2010) (requiring inmates to make and stay out of their beds during the day was not constitutional violation) (judgement adopting report and recommendation).

Patin has failed to allege a deprivation of a constitutional right arising from the RCC requirement that he make his bunk each day.  His claims should be dismissed with prejudice as

frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 22. Windows Do Not Open or Close from the Inside

Patin complains that the windows in his unit can only be opened from the outside with the assistance of a guard. It is beyond cavil that Patin would expect that inmates should be allowed to open their dormitory windows from the inside without the permission of a prison official. As repeated in addressing Patin's claims, he has not alleged any risk of harm or other constitutionally protected interest in his inability to open a prison cell window at his will.

There is no alleged risk of harm arising from having inaccessible windows in a prison. It is not unreasonable for the prison officials to secure windows and doors to prevent potential ingress and egress from the dormitories. "Because no law or regulation mandates that inmates be capable of opening their windows, . . . whether to keep them permanently shut is a matter committed to the prison officials' discretion and . . . the officials were free to make the choice they did in consideration of the efficient operation of the facility." *Santos v. United States*, No. 05-60237, 2006 WL 1050512, at *3 (5th Cir. Apr. 21, 2006) (summarizing and affirming the findings made by the district court).

Patin has failed to allege a deprivation of a constitutional right. His claim should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 23.     Inmate Club Donations, Threats, and Fundraisers

Patin complains that the prison officials at RCC took portions of the donation funds from the inmate clubs at the prison.  He alleges that, if the club members complain about it, they are threatened by the officials.  He also complains that the inmates are not allowed to hold fundraisers even though the prison has fundraisers.

Patin is again reminded that he is an inmate not a guest or official at RCC.  Not every privilege bestowed upon the prison or its staff is equally available to the inmates; fundraising ability is just one of those privileges.  Further, the fact that fundraising activities are not conducted in the manner he would prefer does not establish a violation of his constitutional rights.  *See Carter v. Quarterman*, No. 08cv512, 2009 WL 1505389, at *11 (E.D. Tex. May 27, 2009) (complaints of fundraising efforts by the prison did not violate inmate's rights).

Furthermore, with regard to the alleged taking of inmate club funds, that claim also is not cognizable under § 1983.  Patin has not alleged that he has any protected interest in the funds collected by the inmate clubs or that any of those funds were in his account or that he even belongs to any of the clubs.  Even assuming that Patin could allege that he had an interest in or was deprived of the funds, there is no constitutional protection owed him without a showing that he was deprived of those funds without due process of law.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  However, the law further provides that random and unauthorized deprivations of property by state officials, whether negligent or intentional, do not violate the federal constitution if an

adequate post-deprivation state remedy exists. *Alexander*, 62 F.3d at 712 (citing *Hudson v. Palmer*, 468 U.S. at 517 and *Parratt*, 451 U.S. at 527); *accord Wilson v. Holt*, 158 Fed. Appx. at 546. The Fifth Circuit has clearly recognized that Louisiana's tort law under La. Civ. Code art. 2315 *et seq.* provides an adequate remedy for both intentional and negligent deprivations of property. *Hutchinson*, 79 Fed. Appx. at 55; *Copsey*, 36 F.3d at 1342-43; *Marshall*, 741 F.2d at 764. His claim is not cognizable under § 1983.

Furthermore, to the extent Patin claims that the prison officials threatened inmates who lodged complaints about the handling of club funds, he has not alleged any personal physical injury or other violation of his rights arising out of alleged threats made to other inmates. In addition, the Fifth Circuit has long held that "'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" *Robertson*, 70 F.3d at 24 (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)); *accord Burnette v. Phelps*, 621 F. Supp. 1157, 1162 (M.D. La. 1985); *see also*, *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973), *abrogated in part on other grounds by Graham v. Connor*, 490 U.S. 386, 397 (1989) (the use of language, no matter how violent, does not constitute a § 1983 violation); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation actionable under § 1983); *Baird v. Perez*, No. 98-3762, 1999 WL 386746, at *2 n.3 (S.D.N.Y. June 10, 1999) ("verbal harassment, abuse and even vile language by arresting officers 'do not constitute a violation of any federally protected right'") (quoting *Bowles v. New York*, 37 F. Supp.2d 608, 613 (S.D.N.Y. 1999)). "Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ." *Jackson v. Liberty County*, 860 F. Supp. at 363. "[C]itizens do not have a constitutional right to courteous

treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993), *aff'd*, 23 F.3d 410 (7th Cir. 1994) (citations omitted). Thus, Patin's claim of verbal abuse and threats does not rise to the level of a constitutional violation.

Patin's claim challenging the handling of inmate club funds and fundraising opportunities does not allege a deprivation of a constitutional right. His claim should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 24.    Low Quality Weight Equipment

Patin next alleges that the weight equipment at RCC is of low quality. This Court can find no constitutional requirement that Patin be provided with the exercise equipment of his choosing, or of superior quality. The Fifth Circuit has held that convicted inmates do not have a constitutional right to recreation; however, a deprivation of exercise which impairs health may amount to a constitutional violation under the Eighth Amendment. *Accord Miller v. Carson*, 563 F.2d 741, 750-51 & n.13 (5th Cir. 1977). It is well established that "inmates require regular exercise to maintain reasonably good physical and psychological health." *Ruiz*, 679 F.2d at 1152. Thus, to state a claim under § 1983 for lack of exercise, a prisoner must set forth facts sufficient to "support the existence of any health hazard under the specific circumstances involved." *Ruiz*, 679 F.2d at 1152; *accord Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001); *Ordaz v. Lynaugh*, 20 F.3d 1171, 1994 WL 144882, at *4 (5th Cir. Apr.15, 1994) (Table, Text in Westlaw); *Green*, 801 F.2d at 771.

In this case, Patin has made no such allegation. He simply complains about the quality of the weight equipment at the prison. His claim falls far short of stating a claim for which relief can be granted under § 1983. His claim should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 25.  Disciplinary Write-ups for Having Clothing Without Receipts

Patin claims that, when inmates leave RCC, they pass their clothing onto other inmates remaining at the prison. He complains that the receiving inmates are given disciplinary charges for possessing the clothing without being able to produce a receipt for them, as required by prison rule.

As repeated in this Report, Patin does not allege that any of this involves him or that he was ever written up for possessing clothing without a receipt. He also does not allege that the disciplinary action was taken against him in violation of due process. In addition, even if he had, he seems to concede that possessing clothing without a receipt is a violation of prison rules. In other words, Patin has not alleged any claim under § 1983 related to him, his property, or his liberty.

Even if he were to do so, his claim would be frivolous and inappropriate under § 1983. In *Sandin*, the Supreme Court held that a prisoner's protected liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted). As a result, any typical punishment received for disciplinary infractions does not implicate due process concerns. *Odneal v. Hinojosa*, 357 Fed. Appx. 598, 598-99 (5th Cir. 2009) (citing *Malchi v. Thaler*, 211 F.3d 953, 958-59 (5th Cir. 2000) and *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)).

Patin has not alleged that he received a disciplinary charge or punishment for having the unauthorized clothing in his possession. Thus, he has not presented a claim that he received a punishment that presented an "atypical, significant deprivation" which would give rise to a cognizable claim under the Due Process Clause. *Sandin*, 515 U.S. at 486.

Patin's claim should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 26. Canteen Sales, Defective Clothing

Under a broad reading, Patin alleges that the clothing items sold in the RCC canteen are defective and of a low quality for the price charged. First, there is no constitutional right for inmate to be able to purchase items from a commissary. *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop."); *Harrison v. Federal Bureau of Prisons*, 611 F. Supp.2d 54, 62 (D.D.C. 2009) ("It is established that an inmate has no federal constitutional right to purchase items from a prison commissary."); *Hopkins v. Keefe Commissary Network Sales*, No. 07-745, 2007 WL 2080480, at *5 (W.D. Pa. Jul. 12, 2007). Similarly, there is no constitutional guarantee that an inmate will be able to purchase items of a high quality from the prison commissary. *Accord Gutierrez v. Williams*, No. 09CV6204, 2012 WL 33895, at *3 (D. Or. Jan. 6, 2012) ("The inability to obtain a non-defective, higher quality shoe at a competitive price, through the prison commissary, does not give rise to an Eighth Amendment violation.").

In addition, the law is clear that inmates have no constitutionally protected interest in purchasing goods through the prison commissary at the cheapest price possible. *See*, *e.g.*, *McCall v. Keefe Supply Co.*, 71 Fed. Appx. 779, 780 (10th Cir. 2003) (inmate's claim that prison

commissary charged "outrageous" prices for goods purchased through the prison commissary failed to state a constitutional claim); *Tokar*, 97 F.3d at 1083; *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980) ("there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost."); *Armstrong v. Broadus*, No. 08CV225, 2009 WL 3805552, at *9 (S.D. Miss. Nov. 6, 2009); *Brown v. Gulash*, No. 07cv370, 2009 WL 2144592, at *5 (S.D. Ill. Jul. 16, 2009); *Boyd v. Lasher*, No. 09-7641, 2010 WL 444778, at *2 (E.D. La. Feb. 8, 2010) (Africk, J.) (order adopting Report and Recommendation).

Patin's claim should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 27.    Wardens Are Racist Against the African-American Guards and Inmates

Patin complains that, since 2002, the wardens and assistant wardens at RCC have been racist against the African-American security officers. He claims that this is demonstrated by the fact that there are only four African-American lieutenants at RCC. He also claims that this also shows "how racist they are toward black prisoners." As Patin has been reminded, he can not state a claim under § 1983 by asserting violations of the rights of other people. *See ACLU v. Nat'l Sec. Agency*, 493 F.3d at 659; *Coon*, 780 F.2d at 1159. He is not a security guard and can not assert the rights of security officers arising from discrimination in their employment.

The Court also notes that Patin does not allege that he is African-American himself. Even if he is of African-American decent, he has not alleged any act of discrimination against him by any defendant. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). In addition, a district court is bound by the allegations in a

plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). Patin has failed to allege a claim on his own behalf and the claim is otherwise frivolous.

His claim should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 28. <u>People Do Not Wash Their Hands after Playing with Stray Cats</u>

Patin claims that there are cats roaming the prison that often draw the attention of inmates and officers alike. He complains that the officers and inmates feed the cats and pet the cats, then return to their stations, touching common items like door knobs, without washing their hands. As the Seventh Circuit has recognized, "[m]any Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001).

Similarly here, Patin has not alleged that the activity by other inmates and guards placed him in a substantial risk of harm to his health or caused any physical harm to his person. He also does not allege that he did not have access to soap or the ability to wash his own hands. He also mentions in his complaint that the dorms were cleaned on a regular basis, which is why inmates are outdoors on their days-off, an issue already addressed *supra*. The regular cleaning of the dorms should counter any cleanliness problems posed by petting the cats.

As the law stands, there is nothing that would require the prison to provide Patin with a germ free environment. His complaint does not offend contemporary standards of decency nor does it

demonstrate that society would be unwilling to tolerate the conditions under which he must live. As mentioned above, "[w]hether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility." *Bell*, 441 U.S. at 537.

His claim should be dismissed with prejudice as frivolous or for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

## IV.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Patin's § 1983 claims against the defendants, Secretary James LeBlanc, Warden Jeffery Travis, and Warden Robert Tanner, be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[7]

New Orleans, Louisiana, this 18th day of May, 2012.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[7]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.